FOUNTAINE *v.* LEVEQUE.

SPECIFIC PERFORMANCE—DAMAGES.

> On a bill for specific performance of a contract to convey land, it appeared that, after complainant had taken possession, he contracted to sell the premises to one D. for an advanced price, defendant consenting to accept from D. the balance then due from complainant, which amounted to $491, with interest at 10 per cent.; that, after D. had paid defendant $100, defendant, intending no wrong, gave him a deed, and received $400 more, which D. raised by mortgaging the land to a third person, who had no knowledge of complainant's rights. *Held*, that in canceling the deed to D., and decreeing specific performance of defendant's contract to convey to complainant, it would be inequitable to compel defendant to pay the mortgage, as he had received no more than he was entitled to, and complainant had suffered no substantial loss.

Appeal from Houghton; Hubbell, J. Submitted January 8, 1896. Decided March 24, 1896.

Bill by Alphonse Fountaine against Prudent Leveque and others for the specific performance of a land contract, and for the cancellation of a deed and mortgage upon the ground of conspiracy and fraud. From a decree granting in part the relief prayed, but allowing the mortgage to remain a lien upon the land, complainant appeals. Affirmed.

*Dunstan & Hanchette*, for complainant.

*Willard E. Gray (Chadbourne & Rees*, of counsel), for defendants.

MOORE, J. The complainant filed a bill in chancery, alleging: That on October 19, 1891, he (Fountaine) bought from Prudent Leveque and wife 40 acres of land upon contract, for $532.08, payable on or before January 19, 1892, with interest at 10 per cent., and that the com-

plainant went into the possession of the premises, and improved them. That October 6, 1892, Fountaine made a written contract to sell this land, together with the personal property on it, valued at $500, to Jean M. Deslongchamps, for $1,800,—$200 payable on the execution of the contract; $100, January 2, 1893, payable to Leveque; $300 payable to him January 2, 1894, with interest at 10 per cent. per annum; $91.79, January 2, 1895, with interest at 10 per cent.; and the balance of the payments to be made to Fountaine, with interest at 8 per cent. That October 10, 1892, Leveque signed a paper that he was satisfied with the conditions of the last-named contract, "and accepts the said Jean Marie Deslongchamps in payment according to the contract." The bill further charges that Deslongchamps has paid to Leveque all of the $491.79 due from complainant to Leveque; that Fountaine has demanded from Leveque a deed of the premises, which Leveque refuses to give him. The bill also alleges that on October 27, 1894, Leveque, Deslongchamps, and Longpre, to defraud complainant, conspired together, and that Leveque gave Deslongchamps a deed of the premises, and Deslongchamps gave Longpre a mortgage for $400, and that Longpre knew of the contract between Fountaine and Leveque; that the giving of the deed and the mortgage has deprived complainant of his security for the balance due him from Deslongchamps. The bill prays for a specific performance of the contract from Leveque to Fountaine, and asks that the deed and mortgage be delivered up to be canceled and discharged from the records, with a general prayer for relief.

Leveque answered this bill, admitting the title and the two contracts, and that he agreed to accept from Deslongchamps the amount complainant had agreed to pay, but avers that he did not intend to and did not release his lien on the land for the money due him on the contract. He admits that Deslongchamps has paid him all the money due him on the contract, but avers that,

in order to pay, Deslongchamps had to borrow $400 from Longpre, and was obliged to give the latter the mortgage mentioned in the bill of complaint; that to enable him to borrow the money, and with no thought of fraud, he made the deed to Deslongchamps; that Longpre had no knowledge, so far as Leveque knows, but what the title was all right; and that complainant is not entitled to a deed of the premises until he shall pay the money advanced by Longpre to Deslongchamps, because the land was bound for the payment thereof to Leveque.

Longpre answered to the bill, and admits the taking of the mortgage, but denies any conspiracy, or any knowledge of any different title from what the record disclosed; avers that Deslongchamps is irresponsible; and that the mortgage is the only security Longpre has for his loan.

Defendant Deslongchamps did not appear, and the bill was taken as confessed as to him.

The testimony was taken in open court. A decree was entered in favor of Longpre, with costs. Leveque was required to deed the land to complainant. The deed to Deslongchamps was set aside, and the mortgage of $400 was allowed to remain a lien upon the land. Costs were decreed in favor of complainant, and against Leveque. From that decree an appeal was taken by the complainant to this court.

The first question is, shall the mortgage of $400 remain a lien upon the land? The learned trial judge found from the evidence that Longpre loaned the money in good faith, and without knowledge of the contract between Leveque and complainant. We think this finding was entirely warranted by the evidence. It is true that there was testimony showing that one of the witnesses to the land contracts was asked by Longpre, before he took his mortgage, to find out from the office of the register of deeds whether the title to the land was all right. It

is urged that this witness must have known of Fountaine's interest in the land, that he was acting for Longpre in making the inquiry at the register's office, and that his knowledge must be presumed to have come to Longpre. The difficulty with that position is that it appears affirmatively that, when he was making these inquiries for Longpre, he was employed for a definite purpose, not connected with the land contracts, and did not think anything about them at the time. He reported to Longpre that the title was all right, and at that time he believed this to be true. So far as the record discloses, Longpre had no knowledge to the contrary.

The complainant asks, if this court holds the mortgage to be good, to decree:

(1) That the deed from Leveque to Deslongchamps be canceled, and a new warranty deed from Leveque to complainant be made; and that the com lainant have compensation enough to discharge the mortgage given by Deslongchamps to Longpre, so that the complainant should own the land free from any lien for purchase money, or otherwise, because the title belonging to the complainant, being held by the creditor, defendant Leveque, as security for the performance of the contract of the principal debtor, defendant Deslongchamps, was so dealt with by the principal debtor and the creditor, without the consent of the owner of the security, as to release the security; or, instead of cancellation of the deed and of the mortgage, the complainant should have compensation for the amount of $732.71, or the value of the security disposed of by the principal creditor without his consent, the value of the security being based upon the amount due to the complainant upon the contract from Deslongchamps to the complainant, over and above all legal or equitable set-offs.

If that to the court is not firmly established, then (2) the court should decree that the deed from Leveque to Deslongchamps should be set aside, and a new warranty

deed given from Leveque to complainant; and that defendant Leveque should pay and discharge the mortgage from Deslongchamps to Longpre; and that the complainant should pay to the defendant Leveque the actual balance due upon his contract with Leveque, without interest; and that a commissioner should be appointed to ascertain how much more than the $400 was paid by Deslongchamps to Leveque, when the deed was delivered in October, 1894.

Can either of these positions be maintained in this proceeding? The bill is not filed upon any such theory. Complainant comes into a court of equity, and asks for a specific performance of the contract, and to have the deed and mortgage set aside, upon the ground of conspiracy and fraud. He fails to establish the conspiracy and fraud, and the mortgage is allowed very properly, as we think, to remain a lien upon the land. This part of his case having failed, can he have a specific performance of the contract, and damages for a failure to perform it? If it is conceded that, in some cases, damages may be decreed as well as specific performance, is this a case where it would be equitable to do so? This is an appeal to an equity court. Should not the complainant do equity? The principal parties to this litigation are comparatively ignorant men. The complainant testifies through the medium of an interpreter. Defendant Leveque testifies that he agreed to take Deslongchamps for the payments, and supposed the deed would run to him, as the complainant told him he had sold to Deslongchamps. The trial court had these witnesses before him, and evidently could judge of their candor and truthfulness. The record shows that, when Deslongchamps made the contract with complainant, there was to become due to Leveque $491.79, with interest at 10 per cent. It also shows that all he has received since then is $100, paid in 1893, and the $400 obtained of Longpre. Leveque has had no more pay for the land than he was entitled to. While he had no legal

right to make the deed to Deslongchamps, we think the decree of the trial court, in view of the facts disclosed in the record, is an equitable one.

The decree is affirmed, with costs.

The other Justices concurred.